# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

GLENN ELLIAH JOSEPH,

        Plaintiff,

v.                                                                                    Case No. 3:20-cv-542-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,[1]

        Defendant.

## OPINION AND ORDER[2]

### I.  Status

Glenn Elliah Joseph ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of having "[v]ision problems in both eyes" and being "[e]motionally stressed." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or

---

[1] Kilolo Kijakazi recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed November 9, 2020; Reference Order (Doc. No. 14), entered November 13, 2020.

"administrative transcript"), filed November 9, 2020, at 60, 80, 233. Plaintiff filed an application for DIB on December 1, 2016,[3] alleging a disability onset date of January 1, 2006. Tr. at 193-99; see Tr. at 192. The application was denied initially, Tr. at 60-67, 68, 88-91,[4] and upon reconsideration, Tr. at 79, 80-87, 97-102.

On June 3, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 29-49. On July 3, 2019, the ALJ issued a Decision finding Plaintiff not disabled through December 31, 2011, the date Plaintiff was last insured for DIB. See Tr. at 15-23.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council. See Tr. at 4-5, 190, 283-85. On March 4, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On June 2, 2020, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

---

[3] Although actually completed on December 1, 2016, see Tr. at 193, the protective filing date of the application is listed elsewhere in the administrative transcript as November 4, 2016, see, e.g., Tr. at 60, 80.

[4] The administrative transcript also contains an administrative denial of a claim for supplemental security income (SSI) with a protective filing date of November 4, 2016. Tr. at 50-59, 69-77, 78. This claim was not adjudicated by an administrative law judge, see Tr. at 15 (ALJ's Decision indicating the DIB claim was at issue), and is not at issue in this appeal.

On appeal, Plaintiff argues the ALJ erred by "completely fail[ing] to properly identify, establish, or utilize a 'blind date last insured' or establish an onset date of disability" and by "fail[ing] to consider the totality of Plaintiff's testimony as to symptom presentation and progression." Memorandum in Opposition to the Commissioner's Decision (Doc. No. 18; "Pl.'s Mem."), filed February 10, 2021, at 1-2; see Pl.'s Mem. at 6-7 (argument). On April 9, 2021, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's arguments.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings consistent with this Opinion and Order.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 3 -

severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 17-23. At step one, the ALJ determined Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2006 through his date last insured [("DLI")] of December 31, 2011." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that "[t]hrough the [DLI, Plaintiff] had the following severe impairment: retinitis pigmentosa." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ ascertained that "[t]hrough the [DLI, Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 17-18 (emphasis and citation omitted).

The ALJ determined that through the DLI, Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff could] perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing of ramps, stairs, ladders, ropes o[r] scaffolds; no work with moving, mechanical parts or unprotected heights; no more than occasional depth perception or field of vision and should not be required to work in settings that require color vision.

Tr. at 18 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that "[t]hrough the [DLI, Plaintiff] was unable to perform any past relevant work" as a "RN, general duty nurse." Tr. at 21 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("49 years old . . . on the date last insured"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the VE's testimony and found that "[t]hrough the [DLI], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," Tr. at 21-22 (emphasis and citation omitted), such as "Marker," "Order caller," and "Router," Tr. at 22. The ALJ concluded Plaintiff "was not under a disability . . . at any time from January 1, 2006, the alleged onset date, through December 31, 2011, the [DLI]." Tr. at 22 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by

'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

As noted, Plaintiff argues the ALJ failed to establish a "blind" DLI and onset date of disability. Pl.'s Mem. at 1. Plaintiff also argues the ALJ erred in failing to consider the totality of his testimony about the presentation and

progression of his visual impairment. See id. at 2. Plaintiff's contentions on appeal necessarily require a discussion of the statutory definition of blindness, Listings relating to blindness, and the ALJ's finding at step three of the sequential evaluation process that Plaintiff did not meet or medically equal a Listing.

Blindness is defined in the Social Security Act as "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens." 42 U.S.C. § 416(i)(1). Potentially applicable here are Listings 2.02, 2.03, and 2.04. Listing 2.02, entitled, "Loss of central visual acuity," requires that "[r]emaining vision in the better eye after best correction is 20/200 or less." 20 C.F.R. 404, Subpt. P, App. 1 § 2.02. Listing 2.03, entitled, "Contraction of the visual field in the better eye," requires either: "A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees"; "B. An MD of 22 decibels or greater, determined by automatic static threshold perimetry that measures the central 30 degrees of the visual field"; or "C. A visual field efficiency of 20 percent or less, determined by kinetic perimetry."  Id. § 2.03A, B, C (citations omitted). Listing 2.04, entitled, "Loss of visual efficiency, or visual impairment, in the better eye," requires either: "A. A visual efficiency percentage of 20 or less after best correction"; or "B. A visual impairment value of 1.00 or greater after best correction." Id. § 2.04A, B (citations omitted). A person is considered to "have statutory blindness only if [his or her] visual disorder meets the criteria

of 2.02 or 2.03A," and not if it either "medically equals the criteria of 2.02 or 2.03A or meets or medically equals the criteria of 2.03B, 2.03C, 2.04A, or 2.04B." Id. § 2.00A(2)(c); see also 42 U.S.C. § 416(i)(1) (defining "blindness" as "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens").

Importantly, "[t]here are situations where there may be more than one DLI." Program Operations Manual System ("POMS"), DI 25501.320.A.2. (accessible at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425501320). "At the [established onset date], a claimant who meets [the Administration's] statutory definition of blindness has to be fully insured at the time he or she meets [the] statutory definition of blindness; while a claimant who is disabled must be currently and fully insured at the time he or she meets [the] medical and technical requirements for disability." Id. "Thus, there can be one DLI for blindness and another DLI for disability." Id.

As courts have recognized and Defendant evidently concedes, ALJs when faced with viable claims of blindness generally calculate a DLI for purposes of the typical insured status requirements and a DLI for benefits based on blindness. See Def.'s Mem. at 5 n.2 (citation omitted) ("There can be more than one [DLI], including a disability [DLI] and a blind [DLI], which may be different dates."). The two dates can be vastly different. See, e.g., Rico v. Saul, No. 19-cv-4761 (BMC), 2020 WL 6746835, at *1 (E.D.N.Y. Nov. 17, 2020) (unpublished) (observing that a DLI can be extended upon a showing of blindness); Borer v.

- 8 -

Astrue, No. 10-CV-962S, 2012 WL 912974, at *2 (W.D.N.Y. Mar. 16, 2012) (unpublished) (ALJ found typical DLI was September 30, 1993 and DLI for blindness was December 31, 2006).

At step three, the burden rests on the claimant to prove the existence of a Listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

Here, during the hearing, the following exchange occurred regarding the DLI in relation to Plaintiff's potential statutory blindness:

> ATTY: Your Honor, somebody with Social Security mentioned to him that his date last insured would be –
>
> CLMT: 2028.
>
> ATTY: – 2028.
>
> ALJ: Only if you're statutorily blind. Is he statutorily blind? That was—
>
> ATTY: That was the–that's the issue.

> ALJ: –you're not at the –yeah, I don't think it was at the time of the date last insured expired.
>
> ATTY: Okay, okay,
>
> ALJ: Because I think even the DDS recognized that the condition did worsen later on, but—
>
> ATTY: Okay.
>
> ALJ: Okay.

Tr. at 33-34.

In the written Decision, there is no discussion of a potential blind DLI. The ALJ found that Plaintiff's DLI, i.e., the date he "last met insured status requirements of the Social Security Act," was December 31, 2011. Tr. at 17. With respect to whether Plaintiff met or equaled a listing, the ALJ found he did not, only specifically mentioning consideration of "2.03" but not otherwise discussing listings or the evidence of record. Tr. at 17-18. The ALJ at later steps recognized Plaintiff "has a history of treatment for retinitis pigmentosa," but found "the bulk of that treatment was after the expiration of the [DLI] of December 31, 2011." Tr. at 19 (citations omitted). To the extent any medical evidence post-dated the DLI, the ALJ elected not to discuss it, finding it was "not pertinent to this Title II disability determination." Tr. at 19.

In attacking the ALJ's election not to calculate a blind DLI, Plaintiff contends he "conclusively established" that he met Listing 2.03B and thus, "Plaintiff's statutory blindness requirement was satisfied." Pl.'s Mem. at 6.

- 10 -

As Defendant points out and the Listings make clear, however, meeting Listing 2.03B does not qualify as statutory blindness. See Def.'s Mem. at 5-7; 20 C.F.R. 404, Subpt. P, App. 1 § 2.00A(2)(c); 42 U.S.C. § 416(i)(1). According to Defendant, because Plaintiff did not establish he was statutorily blind, "whatever Plaintiff's blind [DLI] would be is irrelevant." Def.'s Mem. at 5-6.

What both parties miss in making their arguments is that there is evidence in the record that appears to be highly probative on the question of whether Plaintiff is, in fact, statutorily blind and is not predicated on Plaintiff meeting Listing 2.03B. See, e.g., Tr. at 327-36 (RFC questionnaire and attached clinic note containing treating doctor's opinion that Plaintiff "meets criteria [of] social security definition [of] legal blindness" and providing findings). However, the ALJ did not discuss this evidence, electing not to because it post-dated the DLI of December 31, 2011. Tr. at 19.

The undersigned cannot determine from a review of the ALJ's Decision if he properly considered whether Plaintiff is statutorily blind or whether Plaintiff is entitled to a different DLI based on blindness. Because the ALJ relied so heavily on the "minimal medical evidence" preceding the DLI in denying Plaintiff's claim, Tr. at 19, the failure to explicitly consider these matters was not harmless. Reversal with remand is required. The ALJ's consideration on remand of whether Plaintiff is statutorily blind or is entitled to a different DLI based on blindness is likely to impact his findings regarding Plaintiff's

testimony. Thus, the undersigned need not address Plaintiff's argument in this regard.[6] The ALJ on remand shall reconsider Plaintiff's testimony as appropriate.

## V. Conclusion

Based on the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A) Explicitly consider whether Plaintiff is entitled to a blind date last insured as a result of statutory blindness;
>
> (B) If appropriate, reconsider Plaintiff's testimony about how his visual impairment affects him; and
>
> (C) Take such other action as may be necessary to resolve this matter properly.

---

[6] It is worth noting, though, that because the ALJ relied so heavily on the lack of medical evidence preceding the DLI, the ALJ's handling of Plaintiff's testimony about how his impairment affected him during the relevant time period was particularly important. The ALJ recognized Plaintiff suffers from retinitis pigmentosa, a condition that is progressive and incurable. See Tr. at 18, 20. But, confusingly, the ALJ began the discussion of Plaintiff's testimony by finding Plaintiff's "statements about the intensity, persistence, and limiting effects of his . . . symptoms" to be "inconsistent because the objective EOG testing confirmed diagnosis of retinitis pigmentosa." Tr. at 20 (emphasis added, citation omitted). This sentence would curiously suggest that objective testing confirming the progressive and incurable condition somehow is inconsistent with Plaintiff's statements about how it affects him.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** in Jacksonville, Florida on September 17, 2021.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record